IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCO DE PUENTE- HUDSON, ) | NO. 1:08-cv-01228 -OWW-GSA-PC |
| ) | |
| Plaintiff, ) | FINDINGS AND RECOMMENDATIONS RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT |
| v. ) | |
| DERRAL ADAMS, ) | |
| ) | |
| Defendant. ) | (ECF Nos. 23, 40) |
| _____ ) | |
| | OBJECTIONS DUE IN THIRTY DAYS |

Plaintiff is a state prisoner proceeding pro se in this civil rights action. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. Pending before the Court are Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment.

**I.      Procedural History**

This action proceeds on the original complaint filed in Kings County Superior Court, and removed to this Court on August 19, 2008. Plaintiff, an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR) at CSP Corcoran, brings this civil rights action against Defendant Derral Adams, Warden at CSP Corcoran. Plaintiff sets forth claims for violation of the First Amendment and the Due Process Clause of the Fourteenth Amendment

arising out of the prohibition on receipt of and the confiscation of subscription magazines. Plaintiff also sets forth claims regarding a failure to respond to appeals, claims against a doe defendant, and a claim for declaratory relief. On January 23, 2009, an order was entered, finding that the complaint stated a claim for relief against Defendant Adams on Plaintiff's First Amendment claim. (ECF No. 10.)   The complaint failed to state a claim for relief on Plaintiff's remaining claims. The order provided Plaintiff with the option of filing an amended complaint or notifying the Court that he intends to proceed on the First Amendment claim against Defendant Adams only. On February 5, 2009, Plaintiff responded to the order, notifying the Court that he intended to proceed on his First Amendment claim against Defendant Adams. (ECF No. 15.)   Defendant Adams filed an answer to the complaint on May 18, 2009. (ECF No. 21.)   Plaintiff filed his motion for summary judgment on July 24, 2009.  (ECF No. 23.) Defendant filed an opposition to Plaintiff's motion for summary judgment and cross-motion for summary judgment on March 24, 2010.  (ECF NO. 40.)[1]   Plaintiff filed his opposition to Defendant's motion for summary judgment on August 3, 2010.  (ECF No. 62.)

**II.    Summary of Allegations**

Prior to Plaintiff's transfer to CSP Corcoran, he was housed at Lancaster State Prison. While at Lancaster, Plaintiff subscribed to, and received, publications, including the magazines Maxim, Stuff, and FHM[2]. Plaintiff was housed at Corcoran from April of 2006 to February of 2007, when he was transferred to Calipatria State Prison.[3] While at Corcoran, the subscriptions to these three publications were disallowed pursuant to a policy established prior to the arrival of Defendant Adams as Warden. On September 13, 2006, Defendant Adams reviewed the policy

---

[1] On May 14, 2010, the Court issued and sent to Plaintiff the summary judgment notice required by <u>Rand v. Rowland</u>, 154 F.3d 952 (9th Cir. 1998), and <u>Klingele v. Eikenberry</u>, 849 F.2d 409 (9th Cir. 1988).  (ECF No. 54.)

[2] For Him Magazine.   Attachment 2 to Defendant's Exhibit C in support of his cross-motion for summary judgment.  (ECF No. 41.)

[3] Court records indicate that Plaintiff was transferred back to Corcoran on January 11, 2011.  (ECF No. 70.)

and removed FHM from the list of disallowed publications. Though Plaintiff did receive one issue of FHM in December of 2006, he did not receive any other issues while at Corcoran.

## III.     Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [a]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ; Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1996), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Matsushita, 475 U.S. at 588; County of Tuolumne v. Sonora Community Hosp., 263 F.3d 1148, 1154 (9th Cir. 2001).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Giles v. Gen. Motors Acceptance Corp., 494 F.3d 865, 872 (9th Cir. 2007). Thus, the

"purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

**IV.     First Amendment**

A prisoner's right to receive publications from outside the prison should be analyzed in light of the factors set out in Turner v. Safley, 482 U.S. 778 (1987). In determining whether a prison regulation is reasonably related to a legitimate penological interest, Turner directs the court to consider the following factors: (1) whether there is a valid, rational connection between the regulation and interest used to justify the regulation; (2) whether prisoners retain alternative means of exercising the right at issue; (3) the impact the requested accommodation will have on inmates, prison staff, and prison resources generally; and (4) whether the prisoner has identified easy alternatives to the regulation which could be implemented at a minimal cost to legitimate penological interests. Turner, 482 U.S. at 89-91.

When considering prison regulations on in-coming publications, "[s]ome content regulation is permissible in the prison context." McCabe v. Arave, 827 F.2d 634, 638 (9th Cir. 1987); see also Thornburgh v. Abbott, 490 U.S. 401, 415-16 (1989).  The Ninth Circuit has held that a policy prohibiting sexually explicit material is constitutionally valid. Mauro v. Arpaio, 188 F.3d 1054 (9th Cir. 1999).  In analyzing the Turner factors, the Court "must accord substantial deference to the professional judgment of prison administrators because they bear a significant responsibility for defining the legitimate goals of a correctional system and for determining the most appropriate means to accomplish them." Overton v. Bazzetta, 539 U.S. 126, 132 (2003).

### A.     2002 Policy

In order to meet his burden on summary judgment, Defendant Adams must come forward with evidence that the basis for the decision to continue to disallow the publications (a policy in existence when Defendant first arrived at CSP Corcoran) satisfies the four part- test in Turner.

#### 1.     Defendant's Evidence

In order to meet his burden on the first Turner factor, Adams must come forward with evidence that the decision to prohibit Plaintiff from receiving FHM, Stuff and Maxim is rationally related to a legitimate penological interest.

Defendant's Exhibit A to his cross- motion for summary judgment is the declaration of R. Juarez, the Mailroom Lieutenant at CSP Corcoran.  Lt. Juarez declares that when inmates housed at CSP Corcoran subscribe to magazines, the mailroom processes them in accordance with Operational Procedure No. 205.  In 2006 and 2007, Operational Procedure 205 directed mailroom staff to review incoming magazines addressed to inmates to ensure the magazine did not contain contraband, including matter containing depictions or descriptions of, among other things, nudity of minors or threatening or violent conduct.  If mailroom staff discovered a magazine containing the contraband, a notice would be sent to the inmate and the publisher explaining why the magazine could not be delivered.  Mailroom staff are not directed or permitted to remove the pages or portions of the magazine containing the contraband material and deliver the altered magazine to the inmate

because inmates are not permitted to possess altered property. (Juarez Decl. ¶¶ 2-4.)

Lt. Juarez declares that to permit inmates to possess altered property would jeopardize prison security because inmates can use altered property to create or store contraband. If an inmate possesses a magazine altered by the mailroom, other officers who conduct future searches of the same magazine will not be able to determine whether the magazine was altered by staff or the inmate. If the inmate altered the magazine, then there is the possibility that the inmate used materials from it to create or hide weapons. (Id. ¶ 5.)

Upon Plaintiff's arrival at Corcoran in April of 2006, the mailroom staff were acting pursuant to a memorandum issued on February 14, 2002, by Warden Galaza. Attachment 1 to Defendant's Exhibit C (the declaration of N. Zavala) is a copy of the memorandum. This memorandum advises all staff and inmates at CSP Corcoran that "effective immediately all "Stuff" and "Maxim" magazines are not allowed at Corcoran State Prison. This decision is based on the fact that over the past several months, numerous issues of these magazines have included articles that contained information which raised specific security concerns." (Id.) Page 2 of Attachment 1 is a similar memorandum issued by then Warden Scribner on August 14, 2003, disallowing FHM Magazine. (Id.)

Defendant's Exhibit B is the declaration of Captain X. Cano, who was employed as the Mailroom Sergeant at CSP Corcoran in 2002 and 2003. Capt. Cano declares that during 2002 and 2003, the mailroom had a general policy of reviewing each issue of an incoming magazine to ensure the magazine did not contain contraband material.

The three magazines at issue in this lawsuit regularly contained contraband material. FHM magazine contained articles on such subjects as how to escape from handcuffs, descriptions of assault, rape and other violent crimes and step-by-step instructions on torture methods, with diagrams and pictures, and methods to avoid leaving marks on torture victims. One issue of FHM contained an image of a nude child, with a caption describing the child in a mocking, sexual manner.

Stuff and Maxim contained pictures and articles similar in content to FHM.[4] (Cano Decl. ¶¶ 2.4.)

Cano further declares that during 2003, on a monthly average, the Corcoran mailroom received approximately 150 issues of FHM magazine. Between January 1, 2003, and July 2003, five of the seven issues of FHM were disallowed from distribution to inmates because the issues contained material that threatened institutional safety. As a result of the contraband contained in these magazines, mailroom staff were required to prepare and issue approximately 750 notices informing individual inmates that FHM magazine could not be delivered to them. ( Id. ¶¶ 4-5.) Cano specifically declares that "preparing and issuing these notices is onerous because each form must be prepared, addressed to the correct inmate, signed by the Custody Captain, and then issued to the inmate." ( Id.)

The Court finds that, as to the first Turner factor, Defendant has met his burden on summary judgment. The evidence submitted by Defendant indicates that the policy in place at the time of Plaintiff's arrival at Corcoran in April of 2006, was reasonably related to a legitimate penological interest. The magazines at issue regularly contained contraband material, such that it became onerous and overburdensome to disallow them issue by issue as to each inmate. The evidence submitted indicates that these magazines regularly contained material that was sexual or violent in nature. Prohibiting inmates from receiving such material is a legitimate penological interest. Preserving order and discipline has long been recognized as a legitimate governmental interest. Procunier v. Martinez, 416 U.S. 396, 412-13 (1974). Prohibiting inmates from receiving sexually explicit materials also serves a legitimate governmental interest. Mauro, 188 F.3d at 1059. Gang suppression, as a means to ensure the safety and security of correctional staff, personnel, inmates, and the public, is a legitimate penological interest. Wilkinson v. Austin, 545 U.S. 209, 227 (2005).

---

[4] Attachment 2 to Exhibit C includes copies of the articles referred to. On April 21, 2010, an order was entered, sealing Defendant's Attachment 2 to Exhibit C. (ECF No. 49.) Plaintiff was served with a redacted copy of Attachment 2. The Court has reviewed Attachment 2 and notes that it comports with the description above. Maxim magazine also contained an article detailing the organizational structure of a major prison gang, along with a flow-chart describing how incarcerated gang leaders issue orders to execute individuals outside prison.

7

Defendant correctly argues that it is common sense that violence, gang information, and child nudity is inimical to institutional security. <u>Frost v. Symington</u>, 197 F.3d 348, 365-7 (9th Cir. 1999)(finding the Arizona Department of Corrections was not required to provide evidence that the ban on pornography served a legitimate governmental interest under <u>Turner</u>, because it is an intuitive, common sense connection); <u>Mauro</u>, 188 F.3d at 1060 (stating that the first <u>Turner</u> prong merely requires that prison officials "might reasonably have thought that the policy would advance its interests.")

As to the second <u>Turner</u> factor, whether there are alternative means of exercising the right at issue, the Court finds that Defendant has met his burden. The evidence submitted by Defendant demonstrates that should mailroom staff attempt to remove the offending pages and articles before forwarding the magazine to Plaintiff, this effort would jeopardize institutional security. Inmates can use altered property to create or store contraband. (Juarez Decl. ¶ 5.) Further, such a policy would run afoul of regulations, as inmates are not permitted to possess altered property. (Juarez Decl. ¶¶ 2-4.) In addressing the constitutionality of a similar regulation, the Supreme Court held that a regulation that barred publications that posed a threat to prison security, or to institutional order and discipline, or facilitated criminal activity, satisfied the second <u>Turner</u> factor because the regulations "permit a broad range of publications to be sent, received, and read . . . . " <u>Thornburgh</u>, 490 U.S. at 418. Defendant correctly argues that Plaintiff was free to access all non-contraband material, and a universe of other magazines that did not present the unique security issues of FHM, Maxim, and Stuff.

The third <u>Turner</u> factor considers the impact the requested accommodation will have on inmates, prison staff, and prison resources generally. As noted above, Defendant has come forward with evidence that during 2003, on a monthly average, the Corcoran mailroom received approximately 150 issues of FHM magazine alone. (Def.'s Ex. B ¶ 5.) During 2003, five of the first seven issues of FHM contained contraband material, requiring mailroom staff to prepare, address, and issue approximately 750 notices to inmates. (<u>Id.</u>) Such notices are particularly onerous because

each one must be signed by the custody captain before it can be distributed to the inmates. (Id.) Defendant argues that over the course of a year, the mailroom would have to prepare and issue thousands of notices to inmates for disallowed issues of FHM, Maxim, and Stuff. Defendant argues that relieving staff of the burden of evaluating each issue of the three problematic publications served to greatly reduce unnecessary workload and channel mailroom resources into more productive tasks.

The Court finds that Defendant has met his burden as to the third Turner factor. Defendant has come forward with evidence that an accommodation that includes an issue by issue approach to banned publications would create an onerous burden and expense for correctional officials. Captain Cano's declaration establishes that, in one month alone, over 700 individual notices were issued and delivered to individual inmates.

The fourth Turner factor turns on whether the prisoner has identified easy alternatives to the policy which could be implemented at a minimal cost to legitimate penological interests. Plaintiff argues that staff could remove the offending images and articles from the magazines and issue the remaining portion to inmates. Captain Cano's declaration establishes that during 2003, on a monthly average, the Corcoran mailroom received approximately 150 issues of FHM magazine alone. Defendant argues that the costs associated with such an approach are not de minimis because it would require significant additional personnel hours to individually inspect, scrutinize, and remove offending images and articles from the magazines. A reasonable inference can be drawn that if the prison received 150 issues of one publication alone, a policy that directed staff to remove offending pages from publications would require significant time and cost to implement.

Defendant has come forward with evidence that during 2003, on a monthly average, the Corcoran mailroom received approximately 150 issues of FHM magazine alone. (Def.'s Ex. B ¶ 5.) Five of the first seven issues of FHM contained contraband material during 2003, requiring mailroom staff to prepare, address, and issue approximately 750 notices to inmates. (Id.) Such notices are particularly onerous because each one must be signed off by the custody captain before it can be distributed to the inmates. (Id.) Defendant argues that over the course of a year, the

9

mailroom would have to prepare and issue thousands of notices to inmates for disallowed issues of FHM, Maxim, and Stuff. Defendant argues that relieving staff of the burden of evaluating each issue of the three problematic publications served to greatly reduce unnecessary workload and channel mailroom resources into more productive tasks. Further, the declaration of Lieutenant Juarez establishes that to permit inmates to possess altered property (in the form of altered magazines) would jeopardize prison security because inmates can use altered property to create or store contraband.

The Court finds that, as to the policy in existence at the time Warden Adams arrived at CSP Corcoran, Defendant has submitted evidence that establishes that the policy satisfies the four-part test in Turner. Defendant has therefore met his burden on summary judgment as to his conduct in complying with the policy in existence at the time he arrived at Corcoran. The burden now shifts to Plaintiff to come forward with evidence that Defendant Adams' conduct in following the 2002 policy did not satisfy the four-part Turner test.

### 2. Plaintiff's Evidence

Plaintiff's undisputed fact number 8 asserts that "Adams was aware of the 'ban' memorandums and did not lift them all although they were contrary to policy." Plaintiff refers the Court to "Defendant's Admission, Response No. 2." Plaintiff attaches the discovery to his memorandum of points and authorities in support of his opposition to Defendant's motion for summary judgment. In Request for Admission No. 2, Plaintiff asks Defendant to admit "that in 2006 you established a ban on particular publications at Corcoran State Prison because your position as Prison Warden vested you authority to do so." Defendant admitted that "certain issues of specific periodicals were disallowed at Corcoran State Prison in 2006." Plaintiff's evidence establishes that certain periodicals were disallowed. That certain publications were disallowed does not create a triable issue of fact as to whether Defendant Adams violated the First Amendment. Defendant has come forward with evidence that the policy disallowing Stuff, Maxim and FHM magazines complied with the four part test in Turner. Defendant's Response to Plaintiff's Request For Admission No.

2 does not establish evidence to the contrary.

The Court has reviewed all of the exhibits attached to Plaintiff's opposition and to his statement of disputed and undisputed facts. Although Plaintiff argues that the policy established in 2002 and 2003 was unconstitutional, he offers no evidence to support such a claim. It is undisputed that Defendant, upon arrival as Warden at CSP Corcoran, followed the existing policy. Defendant has come forward with evidence that the policy comports with the constitutional requirements set out in the four-part Turner test. Although Plaintiff clearly disagrees with Defendant's view of the policy, he offers no evidence that it is unconstitutional. The gravamen of Plaintiff's argument is that the policy should have been modified to allow for an individual determination, magazine by magazine, of a publication's compliance with the policy. Defendant has come forward with evidence that such a practice would be unduly burdensome, expensive, and violate regulations prohibiting the possession of contraband material, including altered publications. Judgment should therefore be entered in favor of Defendant Adams regarding his conduct prior to September of 2006.

**B.    Rescission of Policy**

Defendant's evidence establishes that in July of 2006, after learning that FHM magazine was not allowed at Corcoran, Plaintiff filed a prison grievance asserting that the memorandum banning an entire magazine at a prison is unlawful, and contending that he was entitled to receive notice of each specific issue that is disallowed. (Compl. pp. Ad.-1-Ad.10, Attachment 1 to Pltf.'s Statement of Disputed and Undisputed Facts (copy of Inmate Appeal No. COR 06-03721.)) On September 13, 2006, in response to Plaintiff's complaint, Defendant Adams rescinded the ban on FHM magazine at Corcoran State Prison. (Def.'s Ex. C, Attach. 1; Compl. Ad-8.) The memorandum, in its entirety, follows: "This memorandum is to advise you that effective immediately 'For Him Magazine' (FHM) will be allowed at California State Prison-Corcoran. If you should have any questions or concerns regarding this matter, please contact the Mailroom." (Id.)

Plaintiff received the December 2006 issue of FHM magazine. (Pltf.'s Depo. 20:6-8.) FHM magazine ceased publication in December of 2006. (Id., 18:-25.) Plaintiff was transferred out of

11

Corcoran State Prison in February of 2007.  (Id.)   On June 14, 2007, Defendant issued a memorandum rescinding the ban on Stuff and Maxim magazines at Corcoran State Prison. Ex. C, Attach. 1.)

That Defendant Adams rescinded the policy does not, of itself, create a triable issue of fact regarding the constitutionality of the earlier policy.  Nothing in the exhibits submitted by Plaintiff indicates that the decision to rescind the earlier policy was based on any finding that the earlier policy was improperly promulgated or implemented.   Plaintiff may not simply rely on an inference that the earlier policy was somehow defective.  As noted above, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards, 602 F. Supp. at 1244-45.

**V.      Plaintiff's Motion**

Plaintiff also seeks summary judgment. "[A] party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).   As the party with the burden of persuasion at trial, Plaintiff must establish "beyond controversy every essential element of its" his affirmative claims. S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 888 (9th Cir. 2003) (quoting W. Schwarzer, California Practice Guide: Federal Civil Procedure Before Trial § 14:124-127 (2001)).  The moving party's evidence is judged by the same standard of proof applicable at trial. Anderson, 477 U.S. at 242.

Plaintiff must demonstrate affirmatively (by admissible evidence) that there is no genuine issue of material fact as to each element of his claim for relief, entitling him to judgment as a matter of law.  Plaintiff must also demonstrate the lack of any genuine issue of material fact as to affirmative defenses asserted by the defendant.  But here, Plaintiff need not provide any evidence. He may simply point out the absence of evidence from the defendant. Fontenot v. Upjohn Co., 780 F.2d 1190, 1195 (5th Cir. 1986); Zands v. Nelson, 797 F.Supp. 805, 808 (S. D. Sal. 1992);

Grimmway Enterprises, Inc. v. PIC Fresh Text, 548 S.Supp.2d 840, 845 (E. D. Cal. 2008).

Here, as detailed above, Plaintiff has failed to come forward with any evidence that the policy under which Adams was acting at the time of his arrival at CSP Corcoran was unconstitutional. Nor has Plaintiff shown that Adams' decision to later rescind the policy was based on any belief that the existing policy was in any way deficient or in violation of the First Amendment. Although Plaintiff need only point out the absence of evidence from Defendant, such is not the case here. Defendant has come forward with evidence that the policy in existence at the time he arrived at CSP Corcoran comported with the four-part constitutional test in Turner. Plaintiff offers no evidence to the contrary. Plaintiff argues that mailroom staff could have removed those portions of the magazines that violated the policy but, as noted, Lt. Juarez's declaration established that to allow inmates to possess altered property would jeopardize prison security. Plaintiff also contends, and Defendant's evidence establishes, that Plaintiff did not receive the December 2006 issue of FHM magazine after Adams rescinded the policy in September of 2006. However, Plaintiff offers no evidence that Defendant Adams was in any way responsible for the failure of Plaintiff to receive the December 2006 issue, which magazine ceased publication in December of 2006.

## VI. Conclusion and Recommendation

Defendant has come forward with evidence establishing that the policy in existence at the time he arrived at CSP Corcoran was constitutionally valid, and that he acted pursuant to that policy in banning the publications at issue. There is no evidence that the policy was unconstitutional, or that Defendant Adam's decision to rescind the policy regarding the Stuff, Maxim and FHM magazines was based on any constitutional infirmities in the earlier policy. The gravamen of Plaintiff's complaint is that because the magazines were allowed at other prisons and because the policy regarding Stuff, Maxim and FHM was eventually rescinded, he was unconstitutionally denied the right to receive those publications. Plaintiff offers no evidence that Defendant Adams's conduct in following the earlier policy or in rescinding the policy violated Plaintiff's First Amendment rights. Accordingly, IT IS HEREBY RECOMMENDED that Plaintiff's motion for summary judgment be

denied, and Defendant's cross motion for summary judgment be granted. Judgment should therefore be entered in favor of Defendant and against Plaintiff.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within thirty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.   The parties are advised that failure to file objections within the specified time waives all objections to the judge's findings of fact. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).  Failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **February 17, 2011**              **/s/ Gary S. Austin**
                                            UNITED STATES MAGISTRATE JUDGE